IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JAMES GILLETTE and ERICA MICHALIGA, <br><br> Plaintiffs, <br><br> v. <br><br> MARK A. CIAVARELLA, JR., MICHAEL T. CONAHAN, COUNTY OF LUZERNE, GREG SKREPENAK, TODD VONDERHEID, SAM GUSTO, SANDRA BRULO, LUZERNE COUNTY DEPARTMENT OF JUVENILE PROBATION, ROBERT J. POWELL, ROBERT MERICLE, PA CHILD CARE, MERICLE CONSTRUCTION, INC., PA CHILD CARE, LLC, WESTERN PA CHILDCARE, LLC, MID-ATLANTIC CHILD YOUTH SERVICES, LLC, POWELL LAW GROUP, P.C., BARBARA CONAHAN, CINDY CIAVARELLA, PINNACLE GROUP OF JUPITER, LLC, GREGORY ZAPPALA, BEVERAGE MARKETING OF PA, INC., and JOHN DOE, ESQUIRE, <br><br> Defendants. | CIVIL ACTION NO. 3:11-CV-658 <br><br> (JUDGE CAPUTO) |

**MEMORANDUM**

Presently before the Court are Defendant Mark A. Ciavarella's Motion to Dismiss and Defendant Western PA Childcare, LLC's Motion to Dismiss.[1] Mr. Ciavarella's motion will be denied in part and granted in part because he is only shielded by judicial immunity for

---

[1] This motion was originally filed by both Western PA Childcare and Mid-Atlantic Youth Services Corp., but Plaintiffs have since dismissed their suit against Mid-Atlantic and several other Defendants.

1

judicial acts taken within his jurisdiction. Western PA Childcare, LLC's motion will be granted in part because 42 U.S.C. § 1983 does not apply to state law violations, but denied in part because Plaintiffs have stated a claim under § 1983 for federal civil rights violations and have standing to assert their timely civil RICO claims.

## I. Background

Plaintiffs' suit arises out of an alleged conspiracy involving judicial corruption on the part of two former Luzerne County Court of Common Pleas ("LCCCP") judges: Mark Ciavarella and Michael Conahan. The general facts of this conspiracy have already been laid out in *Wallace v. Powell*, No. 3:09-cv-0286, 2009 WL 4051974 (M.D. Pa. Nov. 20, 2009), another action against these Defendants arising out of the same circumstances. This opinion will only address the facts that are relevant to the instant motions filed by Defendants Mr. Ciavarella and Western PA Child Care, LLC ("WPACC").

The complaint alleges as follows: In June of 2000,[2] Mr. Ciavarella presided over juvenile proceedings in the LCCCP. He began discussing the potential construction of a juvenile detention facility in Luzerne County, coming to an agreement with Defendant Robert Mericle, a contractor, and Defendants Robert Powell and Gregory Zappala, acting as Defendant PA Child Care ("PACC"), to build a juvenile detention center that would be operated by PACC. On January 29, 2002, Mr. Conahan signed an agreement between PACC and LCCCP to house juvenile offenders at a the PACC facility. He also took action to divert funds away from the Luzerne County juvenile detention center. In

---

[2] All dates are approximate.

2

January 2003, Mr. Conahan and Mr. Ciavarella arranged to receive a payment from Mr. Powell and Mr. Mericle for the roles the judges played in accomplishing the construction of the PACC facility. All Defendants took steps to conceal these payments, including making multiple financial transactions via wire transfer, entering false entries in books and records, creating false notations on checks, and creating fraudulent agreements.

Due to the success of the PACC facility, Mr. Powell and Mr. Zappala built a second detention center in western Pennsylvania, this time acting as Defendant WPACC, with Mr. Mericle as the contractor. The two judges each received payment from WPACC for their roles in the construction of the facility. Throughout the scheme, the two judges received a total of approximately $2.6 million in payments.

Starting in February 2003, after the PACC facility was completed, Mr. Ciavarella began directing that the juvenile offenders brought before him in court be sent to the PACC facility. Upon completion of the WPACC facility, he directed that juvenile offenders be sent there as well. Mr. Ciavarella ordered the detention of juveniles even when Juvenile Probation Officers did not recommend detention and put pressure on court staff to recommend detention. He used his administrative powers to adopt procedures for a "specialty court" that allowed for more juveniles to be sent to the PACC and WPACC facilities. He did not disclose his financial interest in the facilities to juvenile offenders or their families.

Plaintiff James Gillette was one of the juvenile offenders who appeared in front of Mr. Ciavarella. In June 2004, he faced charges of assault, terroristic threats, harassment, disorderly conduct, and criminal mischief. At his proceedings, he was denied his right to counsel and due process. He was incarcerated almost continuously

between June 2004 and October 2008.

Mr. Gillette and his mother, Erica Michaliga, filed a complaint in the Middle District of Pennsylvania on April 8, 2011. The complaint contains three claims: Count alleges a violation of the Racketeering Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961-68; Count II alleges a conspiracy to violate RICO; and Count III alleges civil rights violations under 42 U.S.C. § 1983. Mr. Ciavarella moved to dismiss on May 25, 2011. WPACC moved to dismiss on June 13, 2011. Both motions have been fully briefed and are ripe for disposition.

## II. Standard of Review

Federal Rule of Civil Procedure 12(b)(6) provides for the dismissal of a complaint, in whole or in part, for failure to state a claim upon which relief can be granted. Dismissal is appropriate only if, accepting as true all the facts alleged in the complaint, a plaintiff has not pleaded "enough facts to state a claim to relief that is plausible on its face," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007), meaning enough factual allegations "'to raise a reasonable expectation that discovery will reveal evidence of'" each necessary element, *Phillips v. County of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008) (quoting *Twombly*, 550 U.S. at 556).  The pleading standard of Federal Rule of Civil Procedure 8 does not require "detailed factual allegations," but "[a] pleading that offers 'labels and conclusions' or a 'formulaic recitation of the elements of a cause of action will not do.'" *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1959 (2009) (quoting *Twombly*, 550 U.S. at 555).  "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1950 (2009).

4

Thus, when determining the sufficiency of a complaint, a court must undertake a three-part inquiry. *See Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011). The inquiry involves: "(1) identifying the elements of the claim, (2) reviewing the complaint to strike conclusory allegations, and then (3) looking at the well-pleaded components of the complaint and evaluating whether all of the elements identified in part one of the inquiry are sufficiently alleged." *Id.* A defendant bears the burden of establishing that a plaintiff's complaint fails to state a claim. *See Gould Elecs. v. United States,* 220 F.3d 169, 178 (3d Cir. 2000).

### III. Discussion

**A. Judicial Immunity**

Mr. Ciavarella moves to dismiss the complaint on the grounds that he is protected by absolute judicial immunity. Under the doctrine of judicial immunity, judges are immune from damages suits for judicial acts unless the acts are in the "clear absence of jurisdiction." *Bradley v. Fisher*, 80 U.S. 335, 351 (1871). Judicial immunity applies even where the judge's action "was in error, was done maliciously, or was in excess of his authority." *Stump v. Sparkman*, 453 U.S. 349, 356 (1978). The purpose of the doctrine is to ensure that the public has judges who are "at liberty to exercise their functions with independence and without fear of consequences." *Pierson v. Ray*, 386 U.S. 547, 554 (1967) (quoting *Bradley v. Fisher*, 80 U.S. at 349).

Mr. Ciavarella's motion will be granted in part and denied in part. I addressed the issue of Mr. Ciavarella's judicial immunity when ruling on his motion to dismiss in *Wallace v. Powell*, 2009 WL 4051974 at *6-10. In *Wallace*, I held that Mr. Ciavarella was shielded by judicial immunity for his courtroom conduct–in other words, his juvenile

5

delinquency determinations and the sentences he imposed–because this was judicial action within his jurisdiction. However, I held that Mr. Ciavarella's other alleged actions, such as coercing probation officers to change their recommendations, did not fall within the doctrine of immunity. Because the case at bar involves the same allegations as those in *Wallace*, my analysis is the same. Mr. Ciavarella is entitled to partial judicial immunity.

**B. Section 1983**

Count III of the complaint alleges a violation of the Plaintiffs' rights under the Fifth, Sixth, and Fourteenth Amendments, pursuant to 42 U.S.C. § 1983.[3] Section 1983 states, "Every person who, under color of any statute, ordinance, regulation, custom, or usage . . . subjects, or causes to be subjected, any citizen . . . or any other person . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured." Section 1983 "is not itself a source of substantive rights, but a method for vindicating federal rights elsewhere conferred by those parts of the United States Constitution and federal statutes that it describes." *City of Monterey v. Del Monte Dunes*, 526 U.S. 687, 749 n.9 (1999) (quoting *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979)). To prevail in an action under § 1983, a plaintiff must demonstrate: (1) a violation of a right secured by the Constitution or laws of the United States, and (2) that the alleged deprivation was committed by a person acting under color of state law. *Nicini v. Morra*, 212 F.3d 798, 806 (3d Cir. 2000); *Moore v.*

---

[3] Count III also asserts a § 1983 claim for a violation of Plaintiffs' rights under the Pennsylvania Constitution. WPACC correctly asserts that § 1983 is only a vehicle for the vindication of federal rights, and Plaintiffs agree. Thus, WPACC's motion to dismiss will be granted as to the improper § 1983 claims for violations of state law rights.

6

*Tartler*, 986 F.2d 682, 685 (3d Cir. 1993).

WPACC moves for dismissal of the § 1983 claims on the grounds that the complaint fails to state a claim, offering four arguments in support of its position. First, WPACC asserts that Mr. Gillette does not properly allege a violation of a federal right because he fails to allege several necessary elements.[4] Second, WPACC contends that the complaint does not establish either an express policy by WPACC or the action of a policy maker. Third, WPACC argues that it did not act under color of state law. Finally, it asserts that Plaintiffs did not plead causation. I will address each in turn, concluding that Plaintiffs properly state a claim under § 1983.

**1. Violation of Federal Constitutional Right**

According to WPACC, Mr. Gillette's § 1983 claim is insufficient because it fails to allege necessary elements. WPACC construes Count III of the complaint as a constitutional false imprisonment claim and a malicious prosecution claim. To make a § 1983 claim for false imprisonment, a plaintiff must show that the police lacked probable cause to make the arrest. *Groman v. Manalapan*, 47 F.3d 628, 626 (3d Cir. 1995). To state a § 1983 claim for malicious prosecution, a plaintiff must show, among other things, that the criminal proceeding lacked probable cause and terminated in favor of the accused. *Kossler v. Crisanti*, 564 F.3d 181, 187 (3d Cir. 2009). Because the complaint alleges neither a lack of probable cause for the arrest and proceeding nor a favorable termination for the proceeding, WPACC claims that it must be dismissed.

However, WPACC mischaracterizes the nature of Mr. Gillette's claim. Nowhere in

---

[4] WPACC does not argue that Ms. Michaliga fails to state a claim for a violation of her federal rights.

the complaint does Mr. Gillette refer to malicious prosecution or false imprisonment; these are merely the frameworks imposed by WPACC. Instead, the complaint alleges that Mr. Gillette "was denied his right to counsel and due process." Complaint ¶ 74 (Doc. 1). Neither of these claims require Mr. Gillette to show a lack of probable cause. Further, Mr. Gillette would satisfy any requirement of a favorable determination, as the Pennsylvania Supreme Court vacated all juvenile adjudications entered by Mr. Ciavarella between January 1, 2003 and May 31, 2008. As I held in *Clark v. Conahan*, 737 F. Supp. 2d 239, 253 (M.D. Pa. 2010), that order constitutes a favorable termination. For these reasons, WPACC has failed to demonstrate that Mr. Gillette's claim is missing any required elements.

### 2. Express Policy / Action by Policy Maker

WPACC's motion to dismiss on the grounds that the complaint does not allege that any civil rights violations were pursuant to a company policy will be denied. WPACC bases its argument on the idea that under § 1983, a private corporation is treated in the same fashion as a municipality. The Supreme Court held in *Monell v. New York City Department of Social Services* that to establish municipal liability under § 1983, a plaintiff must prove that "action pursuant to official municipal policy" caused his injury. 436 U.S. 658, 691 (1978). "Official municipal policy includes the decisions of a government's lawmakers, the acts of its policymaking officials, and practices so persistent and widespread as to practically have the force of law." *Connick v. Thompson*, 131 S. Ct. 1350, 1359 (2011). The Third Circuit has not yet held that the *Monell* standard applies to § 1983 claims against private corporations, but even if the standard does apply, Plaintiffs allege that Mr. Powell was in a policy making position at

WPACC. The complaint notes that Mr. Powell was doing business as WPACC and that he took several actions on behalf of WPACC. This is sufficient at the motion-to-dismiss stage to establish that Mr. Powell's actions constituted official policy for WPACC. *See Wallace v. Powell*, No. 09-286, 2010 WL 3398995, at *6 n.3 (M.D. Pa. Aug. 24, 2010). Thus, the complaint will not be dismissed on these grounds, though WPACC may reassert this objection at the summary judgment stage.

### 3. Color of State Law

WPACC's motion to dismiss will also be denied because Plaintiffs have sufficiently alleged that WPACC acted under color of state law. A private citizen who conspires with a state actor is acting under color of law for the purposes of § 1983. *Dennis v. Sparks*, 449 U.S. 24, 27-28 (1980). "To demonstrate a conspiracy under § 1983, a plaintiff must show that two or more conspirators reached an agreement to deprive him or her of a constitutional right 'under color of law.'" *Williams v. Fedor*, 69 F. Supp. 2d 649, 666 (M.D. Pa. 1999) (quoting *Parkway Garage, Inc. v. City of Phila.*, 5 F.3d 685, 700 (3d Cir. 1993)). Here, Plaintiffs allege that Mr. Powell, acting on behalf of WPACC, made an agreement with the judges that he would pay them for their assistance in facilitating the construction and use of juvenile detention centers in Luzerne County. WPACC objects that even if there was an agreement to build the facilities, there was no agreement to violate the rights of juveniles. But just as the plaintiffs in *Wallace v. Powell* did, the Plaintiffs here "clearly allege in their complaint[] that there was one overarching conspiracy." 2010 WL 3398995 at *6. Thus, as I noted in that case, "Defendants' challenge is better suited for the summary judgment stage at which point all parties can marshal evidence in support of their positions." *Id.* Plaintiffs'

9

complaint sufficiently alleges a conspiracy, so the claim will not be dismissed.

### 4. Causation

Finally, WPACC does not succeed in its argument that the complaint lacks allegations of causation. WPACC argues that there are no allegations that its activity caused the Plaintiffs' injuries. But because Plaintiffs successfully alleged WPACC's participation in an overarching conspiracy that violated Plaintiffs' civil rights, the complaint establishes a causal link between WPACC's actions and Plaintiffs' injuries.[5]

## C. RICO

In Counts I and II, Plaintiffs allege violations of § 1962 of RICO, 18 U.S.C. §§ 1961-68. Section 1962(c) of RICO makes it unlawful "for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity." Section 1962(d) makes it unlawful "for any person to conspire to violate" § 1962(c). *Id.* § 1962(d). "Any person injured in his business or property" by a violation of § 1962 may file a civil action against the violator. *Id.* § 1964(c). To plead a civil RICO claim, "the plaintiff must allege (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *In re Ins. Brokerage Antitrust Litig.*, 618 F.3d 300, 362 (3d Cir. 2010) (quoting *Lum. v. Bank of Am.*, 361 F.3d 217, 223 (3d Cir. 2004)). If a plaintiff fails to allege an substantive RICO violation, any conspiracy claim under § 1962(d) must also be dismissed. *Id.* at 364.

---

[5] I further note that it may be possible for a plaintiff to establish "the requisite causal connection . . . not only by some kind of direct personal participation in the deprivation, but also by setting in motion a series of acts by others which the actor knows or reasonably should know would cause others to inflict the constitutional injury." *Pilchesky v. Miller*, No. 3:CV-05-2074, 2006 WL 2884445, at *4-5 (M.D. Pa. Oct. 10, 2006) (quoting *Hydrick v. Hunter*, 449 F.3d 978, 991 (9th Cir. 2006)). Because Plaintiffs allege that the conspiracy encompassed the constitutional violations, I need not determine at this point whether this standard applies.

WPACC moves to dismiss Plaintiffs' claims under RICO for four reasons. First, it argues that the Plaintiffs do not have standing to assert a civil RICO claim. Second, it asserts that Plaintiffs' claims are untimely. Third, WPACC states that the conspiracy claim must be dismissed because Plaintiffs have not alleged an substantive RICO violation. I will address each argument in turn, concluding that Plaintiffs may go forward with their RICO claim.

**1. Standing**

WPACC moves to dismiss Plaintiffs' RICO claims for a lack of standing. The Third Circuit Court of Appeals has noted that there are two distinct parts of the standing requirement of a civil RICO action: (1) that the plaintiff suffered an injury to business or property and (2) that the injury was proximately caused by the defendant's RICO violation. *Maio v. Aetna, Inc.*, 221 F.3d 472, 483 (3d Cir. 2000); *see also* § 1964(c).

WPACC's first challenge to Plaintiffs' standing is that the complaint does not allege any predicate acts on the part of WPACC. The Supreme Court has established that a RICO plaintiff must show "that he or she was injured by 'an act that is independently wrongful under RICO.'" *Anderson v. Ayling*, 396 F.3d 265, 269 (3d Cir. 2005) (quoting *Holmes*, 503 U.S. at 505-06). According to WPACC, Plaintiffs' alleged injuries were caused by Mr. Ciavarella's actions during Mr. Gillette's hearing, which were not predicate acts because they did not violate RICO. Plaintiffs respond that Mr. Powell engaged in predicate acts, including wire fraud, mail fraud, and honest services fraud, and these acts are imputed to WPACC because Mr. Powell was acting on the corporation's behalf. Thus, it appears that Plaintiffs are asserting a RICO claim against WPACC on the basis of a respondeat superior theory. Respondeat superior may be applied under RICO where it is not otherwise prohibited by statute. *Petro-Tech, Inc. v.*

*W. Co. of N. Am.*, 824 F.2d 1349, 1358 (3d Cir. 1987).

Because Plaintiffs' respondeat superior theory will require factual development, it is inappropriate to dismiss the claim now for a lack of standing. WPACC argues that it cannot be held liable for Mr. Powell's actions under a respondeat superior theory because he acted outside the scope of his employment. As I stated in *Clark*, however, the question of whether an employee acted within the scope of his employment involves "factual questions that are not properly determined at the motion to dismiss stage." 737 F. Supp. 2d at 270. Thus, WPACC may challenge the theory of respondeat superior liability at the summary judgment stage. At this stage, however, Plaintiffs have sufficiently alleged a predicate act by WPACC based on the respondeat superior theory. Its motion to dismiss on these grounds will be denied.

WPACC next claims that Plaintiffs have not shown proximate cause. Proximate cause requires "some direct relation between the injury asserted and the injurious conduct alleged." *Holmes v. Sec. Investor Prot. Corp.*, 503 U.S. 258, 268 (1992). Proximate cause, however, is "a flexible requirement that does not lend itself to a black-letter rule." *Bridge v. Phoenix Bond & Indem. Co.*, 533 U.S. 639, 654 (2008). Following the Supreme Court in *Holmes v. Securities Investor Protection Corp.*, 503 U.S. 258, the Third Circuit considers three factors to determine proximate cause in the context of RICO: "(1) the directness of the injury;" "(2) the difficulty of apportioning damages among potential plaintiffs;" and "(3) the possibility of other plaintiffs vindicating the goals of RICO." *Allegheny Gen. Hosp. v. Philip Morris, Inc.*, 228 F.3d 429, 443 (3d Cir. 2000) (citing *Holmes*, 503 U.S. at 268-69; *Steamfitters Local Union No. 420 Welfare Fund v. Philip Morris, Inc.*, 171 F.3d 912, 932 (3d Cir. 1999)).

WPACC's argument focuses on the third factor, claiming that there is a plaintiff

with a more direct injury who may assert claims: Luzerne County. Addressing the third factor in *Wallace v. Powell*, I noted that the "the general interest in deterrence is already served where other plaintiffs with more direct injuries may assert claims." 2010 WL 3398995 at *9 (citing *Holmes*, 503 U.S. at 269-70). Because there were no allegations of tangible injuries to the County, I determined that the most direct victim of the alleged RICO violation was the juvenile and parent plaintiffs, not Luzerne County. *Id.* at *12. I thus held that the plaintiffs had standing to assert a civil RICO claim. WPACC now attempts to displace this holding by pointing to the complaint's allegations that the County paid millions of dollars to WPACC for placing juveniles at the WPACC facilities. It argues that these allegations make it clear that the County suffered tangible and direct injuries from the alleged fraud, and therefore it is the appropriate party to assert RICO claims against WPACC.

Even considering the County's payments to WPACC, the third factor still does not weigh against the Plaintiffs. WPACC emphasizes the "direct injuries" by the County, but fails to recognize that this factor focuses on "the general interest in deterring injurious conduct." *Holmes*, 503 U.S. at 269. The concern is that "directly injured victims can generally be counted on to vindicate the law as private attorneys general." *Id.* at 269-70. Here, Plaintiffs' complaint concerns alleged RICO violations that occurred four years prior to the action. During those four years, there has been no indication that Luzerne County plans to file a civil RICO suit in order to vindicate its rights. The juveniles and parents claiming an injury based on this alleged fraud are the only parties asserting RICO claims. Thus, this case is distinguished from *Holmes*, where a third-party was attempting to assert a RICO claim based on a subrogation theory.[6] Because the

---

[6] In fact, some courts have determined that the third factor only applies to RICO claims brought under a subrogation theory, and it should not be considered at all in other

13

Plaintiffs suffered a direct injury and are best suited to vindicate the law, WPACC has failed to show they lack standing based on the third factor.

### 2. Statute of Limitations

WPACC argues that Plaintiffs' RICO claims must be dismissed because the statute of limitations has expired. Civil claims under RICO are subject to a four-year statute of limitations. *Rotella v. Wood*, 528 U.S. 549, 553 (2000). In the Third Circuit, the four-year period begins at the time "when the plaintiffs knew or should have known of their injury." *Forbes v. Eagleson*, 228 F.3d 471, 484 (3d Cir. 2000).[7] The statute of limitations will be tolled, however, where there has been fraudulent concealment by the defendant. *Id.* at 486 (citing *Oshiver v. Levin, Fishbein, Sedran & Berman*, 38 F.3d 1380, 1386 (3d Cir. 1994). A plaintiff has the burden of proving fraudulent concealment and must show both "*active misleading* by the defendant" and "reasonable diligence in attempting to uncover the relevant facts" on the part of the plaintiff. *Id.* (citing *Oshiver*, 38 F.3d at 1390, 1391 n.10). "[T]he tolling lasts only 'until the plaintiff knows, or should reasonably be expected to know, the concealed facts supporting the cause of action.'" *Id.* (quoting *Oshiver*, 38 F.3d at 1386).

Because Plaintiffs have adequately established fraudulent concealment, their RICO claims are timely. Plaintiffs have alleged that the Defendants took many actions to hide their conspiracy, such as forging documents. This is sufficient to establish "active misleading." Further, there is no merit to WPACC's argument that Plaintiffs did not exercise reasonable diligence in uncovering their injury. WPACC submits evidence that

---

cases. *See Magnum v. Archdiocese of Phila.*, No. 06-CV-2589, 2006 WL 3359642, at *7 (E.D. Pa. 2006).

[7] The Supreme Court has not yet determined when a civil RICO claim accrues. *Rotella v. Wood*, 528 U.S. 549, 554 n.2 (2000).

during one of Mr. Gillette's hearings, Ms. Michaliga accused Mr. Ciavarella of being "in bed with" someone or receiving money from someone.[8] Thus, WPACC claims that Ms. Michaliga at that point should have undertaken an investigation into possible corruption on the part of Mr. Ciavarella. Ms. Michaliga's comments, however, are more properly characterized as the emotional outburst of a frustrated parent than the legitimate discovery of official corruption. Ms. Michaliga had neither the power to order an investigation nor the resources to conduct her own, and thus she did not fail to exercise reasonable diligence. Because Plaintiffs did not know the concealed facts supporting their cause of action, nor could they reasonably have been expected to know those facts, the statute of limitations on their claim was tolled until criminal charges were brought against the individual Defendants in early 2009. As such, Plaintiffs' 2011 filing of the action was within the statute of limitations, and WPACC's motion to dismiss the RICO charges as untimely will be denied.

### 3. RICO Conspiracy

Because I determined above that Plaintiffs have set forth a substantive RICO claim, there is a basis for Plaintiffs' additional claim of a conspiracy under RICO. WPACC's motion to dismiss the RICO conspiracy claim is thus denied.

---

[8] In deciding a motion to dismiss, the Court should consider the allegations in the complaint, exhibits attached to the complaint, and matters of public record. *See Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993). Because WPACC's evidence is a transcript from a public hearing, it is appropriate for consideration on this motion.

## IV. Conclusion

For the reasons stated above, Mr. Ciavarella's motion to dismiss will be granted in part and denied in part. An appropriate order follows.

 January 31, 2012                                              /s/ A. Richard Caputo
Date                                                                  A. Richard Caputo
                                                                         United States District Judge